In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00336-CR
_____

**TABB EDWARD JOHNSON JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 17-27605**

**MEMORANDUM OPINION**

Tabb Edward Johnson Jr. was convicted of causing an accident involving injury or death, a second-degree felony. *See* Tex. Transp. Code Ann. § 550.021(c)(1)(A). In two issues on appeal, Johnson argues that the evidence is legally and factually insufficient to support his conviction and that the trial court committed reversible error by commenting on the weight of the evidence. For the reasons explained below, we affirm.

1

# I. Background

On March 27, 2017, the body of J.P. was found on the side of the road on College Street in Beaumont, Texas.[1] Witness Michael Peel stated that he was driving to work about 9 a.m. that morning when he noticed a political sign about a candidate that shared his last name. Peel stated that next to the sign, he noticed someone lying in the ditch, and he could see the person's leg and abdomen. Once Peel turned around, he discovered a body next to the sign. Peel then called 911 for help.

Police Officer Aaron Lewallen was the first officer to respond to the scene. Lewallen testified that the body was lying on the side of the road in a grassy ditch near a trailer park. Lewallen stated that injuries to the body were visible and the person's clothes had been partially removed. According to Lewallen, the victim's clothes were pulled up around his chest and, by the way the body was positioned in the ditch, it appeared that the body was dragged and dropped at that location. He stated that he had "seen people knocked out of their shoes[,] [b]ut rarely have I seen anybody knocked out of their clothing." Lewallen secured the scene and called the traffic unit and the auto theft taskforce to help investigate. Lewallen explained that

---

[1] To protect the privacy of the victim, we identify him by using his initials. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]")

debris and car parts were scattered around the scene and the auto theft taskforce would assist in determining the make and model of the car that struck the victim. If a car part happens to have a part number printed on it, that number can be used to trace the make and model of the car. Lewallen stated that the debris field was wide, and he did not observe any skid marks before or after the location of the body. Upon cross examination, Lewallen admitted that skid marks would not necessarily be present even if the driver stopped after they hit the victim.

Initially, the police did not have any leads to a suspect until Tara Johnson, the defendant's wife, came forward and stated she was the driver of the vehicle involved. Lewallen testified that through his investigation he later identified Johnson, not Tara, as the person driving the vehicle when it struck the victim. Johnson came to the police station and with his attorney present, made a statement that he was the actual driver of the vehicle, that he had been drinking and smoking marijuana that night, and that Johnson believed he had hit a dog.

Tara testified that on the night of March 26, 2017, she and Johnson went to a party at a friend's house. While at the party, Tara had a glass of wine and smoked marijuana. Johnson had two beers and also smoked marijuana. Tara stated that she normally drives her vehicle because Johnson's driver's license was suspended. When the couple left their friend's house, Tara was driving, and they argued on their

3

way back to their home. Tara testified that when they arrived home, she was not feeling well, and she sent Johnson to the store to get her medicine. She assumed that Johnson would go to the Walgreens on College Street because it was open 24 hours. According to Tara, the round trip from their home to Walgreens would normally take about 20 minutes. Tara stated that when Johnson was gone more than 45 minutes, she became concerned and texted him. Eventually Johnson arrived home and informed Tara that he thought he hit a dog. Tara testified that she "freaked out" and went outside to observe the damage to her vehicle. She stated that it was dark outside, and she could not observe much damage, but she agreed that pictures admitted at trial that showed extensive damage to the front of the car and a smashed front windshield accurately reflected the damage to her vehicle after the incident.

Tara testified that she and Johnson live with Johnson's parents and they woke her father-in-law to show him the damage to the vehicle. Her father-in-law then drove to College Street to find the scene of the accident. Tara testified that it appeared Johnson had hit something big with the car. Tara stated her father-in-law told them he did not see anything when he drove to College Street. Tara stated that Johnson did not go with his father back to College Street, and he did not call anyone to report that he hit something.

4

Tara testified that the next morning she and her husband had a conversation about insurance, and they agreed to say Tara was driving the vehicle because insurance would not cover the damage if Johnson was driving with a suspended license. The next day, the local news reported that a body had been found on College Street, and Tara's father-in-law called the police and told them that Tara had been driving the car. Tara then gave a statement to the police that she had been driving the car that night. Johnson eventually came forward and admitted that he was driving the vehicle that night.

Tabb Johnson Sr., the defendant's Father, testified that in March 2017, his son and daughter-in-law were living at his home. Tabb stated that after midnight, Johnson and Tara woke him saying that they hit a big dog. Tabb testified that the damage to the car concerned him, and he went to College Street to see if Johnson had hit somebody. Tabb stated that he did not see a body that night or the next morning when he went to work, but he admitted that he did not exit his vehicle to look and see if there was a body.

Johnson testified that in March 2017, he had a suspended driver's license. He stated that on March 26, 2017, he and his wife went and had dinner at her friend's home. While at the house, Johnson consumed two beers and smoked marijuana, but he did not believe he was intoxicated that night. Johnson stated that he and Tara left

5

the friend's house and returned to their home. Johnson stated that he had lost his cell phone earlier in the day and was frantic looking for it when he and Tara returned home.

Johnson stated that at about 11:00 p.m., he left the house to get Tara medicine at Walgreens because she was not feeling well. According to Johnson, after he left his home, he was halfway down College Street when he realized he left his wallet and turned around to go back to the house to retrieve it. After making a U-turn on College Street to return home, Johnson struck J.P. with his car. Johnson stated that "there [was] not a vehicle on the roadway[,] [a]nd I'm driving home and next thing I know[,] I felt and heard -- I seen (sic) a flash of light." Johnson stated that he felt the impact but did not see what he hit. Johnson testified that he "immediately slowed down" but did not skid to a stop. Johnson stated that although he did not get out of his vehicle, he "slowed down to a stop." It was pitch black and Johnson did not see anything. According to Johnson, the area where he hit J.P. "is the darkest part of College Street." Johnson stated that he did not get out of his vehicle and look because he was afraid to walk around.

Johnson believed he had hit a dog. Even after he returned to his house and assessed the damage, including a caved-in windshield, missing side mirror, and broken front headlight, Johnson testified that he believed he had hit a "big dog."

6

Johnson stated that if he had known that he hit a person, he would have immediately stopped to render first aid. Johnson stated that he did not see the victim before or after the accident. According to Johnson, he and Tara mutually agreed to have Tara take the blame for the accident.[2]

Dr. John Wayne testified that he is employed by the Forensic Medical Management Services in Beaumont and that he performed the autopsy on the victim, J.P. According to Dr. Wayne, J.P. suffered from, among other injuries, blunt force trauma to his head and internal injuries resulting in internal decapitation consistent with someone being struck by a vehicle.

The jury found Johnson guilty and, after a hearing on punishment, sentenced Johnson to incarceration for twelve years in the Texas Department of Criminal Justice. The trial court certified Johnson's right of appeal, and Johnson timely filed this appeal.

## II. Analysis

### A. Sufficiency of the Evidence

Johnson asserts that the evidence is insufficient to show that Johnson "failed to stop and render reasonable assistance to [J.P.] when it was apparent that [J.P.] was

---

[2] Several other witnesses testified at trial, but because Johnson does not contest that he hit J.P., we will only discuss the testimony relevant to Johnson's contested issues on appeal. *See* Tex. R. App. P. 47.1.

in need of medical treatment." When an appellant raises a claim of insufficiency, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)) (concluding the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We look to "all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (citations omitted). The jury is the sole judge of the witnesses' credibility and weight to be given to their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Juries may draw multiple reasonable inferences from facts so long as each inference is supported by the evidence presented at trial. *Id*. Accordingly, we must defer to the jury's determinations of weight and credibility of the witnesses. *See Brooks*, 323 S.W.3d at 899; *Hooper*, 214 S.W.3d at 13. In conducting a sufficiency review, an appellate court considers "'events occurring before, during[,] and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited

act.'" *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)).

Per the indictment, the State was required to prove beyond a reasonable doubt that Johnson, knowing an accident occurred, intentionally and knowingly left the scene without providing information or rendering "reasonable assistance" to J.P. when it was apparent J.P. was in need of assistance and J.P.'s death occurred as a result. Johnson contends that the evidence is insufficient to show that he failed to stop and render aid as required by the statute.

The Court of Criminal Appeals has held that the State satisfies this burden by showing that "the accused had knowledge of the circumstances surrounding his conduct, i.e., had knowledge that an accident had occurred." *Goss v. State*, 582 S.W.2d 782, 785 (Tex. Crim. App. 1979) (internal citation omitted). The Houston Court of Appeals explained the 2015 amendment to section 550.021 added the requirement that the driver immediately determine whether a person is involved in an accident, and that any further addition to the statute would be mere surplusage if the State were required to prove the driver knew that the accident involved death or injury to a person before the State could show that the driver shirked his duty to stop and render aid. *Mayer v. State*, 494 S.W.3d 844, 849–50 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

9

Johnson does not contest that he was involved in an automobile accident on College Street on March 26, 2017; he believed he hit a dog and not a person. Johnson's wife testified that Johnson told her immediately afterwards that he had been in an accident and thought he hit a dog. She identified her vehicle as the vehicle that Johnson was driving and confirmed the extensive damage to the vehicle, including a smashed windshield. Johnson's father testified that the damage to the vehicle was so extensive that he immediately left his home and went to the scene of the accident to look for a body. Therefore, overwhelming testimony established Johnson's awareness that he was in an accident that night.

While Johnson argues that the evidence is insufficient to show that he "intentionally or knowingly" left the scene and failed to render aid, Johnson admitted that the area in which he hit the victim was the darkest stretch of the highway and that, at most, he slowed and stopped his vehicle but did not exit the vehicle to see if there was a victim. Johnson testified he was afraid to exit his vehicle. He stated that he did not observe anything and drove home. When at home, he was concerned enough that he told his wife and awoke his father but Johnson told them he believed he hit a big dog. Although only minutes after he arrived home after the accident, Johnson failed to return to the scene with his father. In the bright hours of daylight, Johnson again failed to go back to College Street and investigate. Additionally,

10

although Johnson testified that he did stop his vehicle after the accident, both his wife and police investigators testified that Johnson only slowed his vehicle after the collision.

Section 550.021 has the following language:

a)  The operator of a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person shall:

> (1)  immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
>
> (2)  immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;
>
> (3)  *immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and*
>
> (4)  remain at the scene of the accident until the operator complies with the requirements of Section 550.023.[3]

---

[3] Section 550.023 provides that

[t]he operator of a vehicle involved in an accident resulting in the injury or death of a person or damage to a vehicle that is driven or attended by a person shall:
(1)  give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision;
(2)  if requested and available, show the operator's driver's license to a person described by Subsection (1); and
(3)  provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent

Tex. Transp. Code Ann. § 550.021(a) (emphasis added). Notably, section 550.021(a)(3) requires that a person not only stop their vehicle, but the driver must also "determine if a person is involved in the accident[.]" *Id*. This statutory language is not superfluous, rather it imposes a mandatory obligation on a driver to stop and investigate. *See Mayer*, 494 S.W.3d at 849–50. Therefore, Johnson was charged with a duty to not only stop his vehicle but get out and investigate the accident scene to determine if a person was involved. Johnson failed to do this not only once at the scene of the accident, but twice when he refused to return to the scene with his father and investigate mere minutes after arriving home. "In order to be subject to the duty to stop, investigate, and then render aid, appellant need only have known that an accident occurred." *Id*. at 851. Finally, the fact that Johnson attempted to have his wife take responsibility for his crime could be indicative of guilt. *See Torres v. State*, 794 S.W.2d 596, 598 (Tex. Crim. App. 1990) (noting that consciousness of guilt is "one of the strongest kinds of evidence of guilt"); *State v. Villegas*, 506 S.W.3d 717, 749 (Tex. App.—El Paso 2016, pet. dism'd) ("Any conduct on the part of a person accused of a crime subsequent to its commission that indicates a consciousness of

---

that treatment is necessary, or if the injured person requests the transportation.

Tex. Transp. Code Ann. § 550.023.

12

guilt may be received as a circumstance tending to prove that he committed the act with which he is charged.").

The State was not required to prove that Johnson knew that he had struck a human being; rather, the State must prove Johnson had knowledge of the circumstances surrounding his conduct, i.e., Johnson knew that an accident occurred. *See Goss*, 582 S.W.2d at 785; *Mayer,* 494 S.W.3d at 849–50. The State had to prove that Johnson operated a vehicle, was involved in an accident that resulted in the victim's death, and intentionally or knowingly failed to stop and render reasonable assistance. *See McCown v. State*, 192 S.W.3d 158, 162 (Tex. App.—Fort Worth 2006, pet. ref'd). It was within the province of the jury to weigh the testimony and to resolve any conflicts in the testimony. *See Hooper*, 214 S.W.3d at 13. The jury could have concluded that Johnson's alleged mistaken belief that he struck an animal was not reasonable under the circumstances. *See* Tex. Penal Code Ann. § 8.02(a).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Hooper*, 214 S.W.3d at 13. The evidence is legally sufficient to support the verdict. Accordingly, we overrule Johnson's second issue.

13

## B. Comment on the Weight of the Evidence

Additionally, Johnson argues that the trial court impermissibly commented on the weight of the evidence in violation of article 38.05 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim Proc. Ann. art. 38.05.[4]

The record establishes that Johnson's complained of error occurred outside the jury's presence and without objection from his trial counsel. Therefore, Johnson has failed to preserve error for this Court's review. *See* Tex. R. App. P. 33.1(a)(1)(A); *see also Morgan v. State*, 365 S.W.3d 706, 710 (Tex. App.—Texarkana 2012, no pet.) ("No objection was made to this instruction. Generally, a claim that the trial court erred by commenting on the weight of the evidence during trial or while ruling on evidentiary matters must be preserved by objection before the appellate court may consider it."); *Moore v. State*, 275 S.W.3d 633, 637 (Tex. App.—Beaumont 2009, no pet.) ("[I]n the absence of an objection, [the appellant's]

---

[4] Article 38.05 of the Texas Code of Criminal Procedure provides that:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

complaint, asserting that the questions constitute a comment on the evidence, was waived."). We overrule Johnson's final issue.[5]

### III. Indictment and Judgment

We note that neither party has brought to the attention of this Court that the indictment and subsequent judgment of conviction contain an insufficient numerical recitation of the correct statute. The Texas Code of Criminal Procedure sets out the requirements for an indictment in article 21.02 and provides that the "offense must be set forth in plain and intelligible words." Tex. Code Crim. Proc. Ann. art. 21.02(7). An indictment is usually legally sufficient if it tracks the penal statute in question. *State v. Moff*, 154 S.W.3d 599, 602 (Tex. Crim. App. 2004). An indictment must allege that (1) a person, (2) committed an offense. *Teal v. State*, 230 S.W.3d 172, 179 (Tex. Crim. App. 2007) (citing *Cook v. State*, 902 S.W.2d 471 (Tex. Crim. App. 1995)). To determine if a charging instrument alleges an offense, we must decide if the allegations are clear enough that one can identify the offense alleged. *See id.* at 180. A trial court and the defendant must be able to identify what penal

---

[5] Several Courts of Appeals have held that comments made by the trial court outside the presence of the jury do not affect the defendant's right to fair trial. *See Baca v. State*, 223 S.W.3d 478, 482 (Tex. App.—Amarillo 2006, no pet.); *State v. Strong*, 138 S.W.3d 546, 553 (Tex. App.—Corpus Christi 2004, no pet.); *Murchison v. State*, 93 S.W.3d 239, 261–62 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *Lorenzo v. State*, No. 03-08-00544, 2010 WL 2788757, at *1 (Tex. App.—Austin July 14, 2010, no pet.) (mem. op.).

code provision is alleged and whether that provision vests jurisdiction in the trial court. *See id.* An indictment that tracks the statutory language generally satisfies constitutional and statutory requirements. *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998).

The indictment in question properly identifies Johnson and his crime and properly tracks the language outlined in the statute, resulting in Johnson being on sufficient notice of his charges. *See id.* Accordingly, we modify the judgment of the trial court to properly reflect the correct numerical designation of the statute charged. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993) (stating this Court has the authority to reform the trial court's judgment to correct clerical errors). The trial court's judgment is modified to reflect that Johnson was convicted under section 550.021(c)(1)(A), Texas Penal Code.

## IV.   Conclusion

Having overruled all of Johnson's issues on appeal, we affirm the judgment of the trial court as modified to reflect that Johnson was convicted under section 550.021(c)(1)(A).

AFFIRMED AS MODIFIED.

_____
CHARLES KREGER
Justice

16

Submitted on November 4, 2019
Opinion Delivered March 25, 2020
Do Not Publish

Before Kreger, Horton and Johnson, JJ